Ryan Marshall
BARNES & THORNBURG, LLP
299 S. Main Street, Suite 1825
Salt Lake City, UT  84111
Telephone (801) 906-5125
ryan.marshall@btlaw.com

Jeffrey A. Andrews (*pro vac vice* forthcoming)
Christopher R. Johnson (*pro vac vice* forthcoming)
YETTER COLEMAN LLP
811 Main Street, Suite 4100
Houston, Texas 77002
Telephone: (713) 632-8000
jandrews@yettercoleman.com
cjohnson@yettercoleman.com


Attorneys for Defendant LIGHTING DEFENSE GROUP, LLC

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT COURT OF UTAH**

| | |
|---|---|
| SNAPRAYS, LLC (d/b/a SNAPPOWER), a Utah limited liability company,<br><br>Plaintiff,<br><br>vs.<br><br>LIGHTING DEFENSE GROUP, LLC, a Delaware limited liability company<br><br>Defendants. | **MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION**<br><br>Case No: 2:22-cv-00403-DAK<br><br>Judge:    Hon. Dale A. Kimball |

**TABLE OF CONTENTS**

INTRODUCTION ................................................................................................................ 1

FACTUAL BACKGROUND ............................................................................................... 3

LEGAL STANDARDS ........................................................................................................ 6

ARGUMENT AND AUTHORITIES ................................................................................... 7

    A.    There Is No General Jurisdiction over LDG. ........................................................ 7

    B.    There is No Specific Jurisdiction over LDG. ....................................................... 8

        1.    LDG Has Not "Purposefully Directed" Any Activities at this State. ......... 8

        2.    There Is No LDG Conduct in this State. .................................................. 12

        3.    Personal Jurisdiction over LDG Would Not Be 'Reasonable and Fair.' ........................................................................................................... 12

CONCLUSION ................................................................................................................... 14

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*American Covers Inc. v. Serious Scents, Inc.*,
  No. 2:13-cv-1032, 2014 WL 4956353 (D. Utah Oct. 1, 2014) ................................... 10, 11, 12

*Behagen v. Amateur Basketball Ass'n of U.S.A.*,
  744 F.2d 731 (10th Cir. 1984) ................................................................................................ 6

*Breckenridge Pharm., Inc. v. Metabolite Labs., Inc.*,
  444 F.3d 1356 (Fed. Cir. 2006) ............................................................................................ 13

*Burger King Corp. v. Rudzewicz*,
  471 U.S. 462 (1985) ....................................................................................................... 11, 13

*Diamler AG v. Bauman*,
  571 U.S. 117 (2014) ............................................................................................................... 7

*Dudnikov v. Chalk & Vermilion Fine Arts, Inc.*,
  514 F.3d 1063 (10th Cir. 2008) ........................................................................................... 11

*Elecs. For Imaging, Inc. v. Coyle*,
  340 F.3d 1344 (Fed. Cir. 2003) .............................................................................................. 6

*Far West Capital, Inc. v. Towne*,
  46 F.3d 1071 (10th Cir. 1995) ....................................................................................... 10, 11

*Ford Motor Co. v. Montana Eighth Judicial District Court*,
  141 S. Ct. 1017 (2021) ......................................................................................................... 14

*Goodyear Dunlop Tires Opers., S.A. v. Brown*,
  564 U.S. 915 (2011) ............................................................................................................. 14

*Int'l Shoe Co. v. Washington*,
  326 U.S. 310 (1945) ............................................................................................................. 14

*Maxchief Investments Ltd. v. Wok & Pan Indus., Inc.*,
  909 F.3d 1134 (Fed. Cir. 2018) .................................................................................. 9, 11, 12

*New World Int'l, Inc. v. Ford Global Techs., LLC*,
  859 F.3d 1032 (Fed. Cir. 2017) ........................................................................................ 8, 10

*Red Wing Shoe Co. v. Hockerson-Halberstadt, Inc.*,
  148 F.3d 1355 (Fed. Cir. 1998) ....................................................................................... 6, 10, 13

*Starways, Inc. v. Curry*,
  980 P.2d 204 (Utah 1999) ...................................................................................................... 6

*Synthes (U.S.A.) v. G.M. Dos Reis Jr. Ind. Com de Equip. Medico*,
  563 F.3d 1285 (Fed. Cir. 2009) .......................................................................................12, 13

*ThermoLife Int'l LCC v. Human Power of N Co.*,
  No. 6-21-cv-144-ADA, 2021 WL 6303232 (W.D. Tex. Dec. 21, 2021) ................................... 5

*Walden v. Fiore*,
  571 U.S. 277 (2014) ............................................................................................................ 6, 9

*Xilinx, Inc. v. Papst Licensing GmbH & Co. KG*,
  848 F.3d 1346 (Fed. Cir. 2017) ............................................................................................... 8

**Statutes**

Utah Code Ann. § 78B–3–201(3) (2008) ...................................................................................... 6

**Rules**

Fed. R. Civ. P. 12(b)(2) ....................................................................................................... 1, 2, 14

Defendant Lighting Defense Group, LLC ("LDG") respectfully moves that Plaintiff SnapRays, LLC d/b/a SnapPower's ("SnapPower") Declaratory Judgment Complaint for Patent Non-Infringement be dismissed for lack of personal jurisdiction pursuant to Fed. R. Civ. P. 12(b)(2).

## INTRODUCTION

LDG has no connection to Utah. It is not "at home" in Utah and in its entire existence, it has never reached into Utah for any purpose. Put simply, there is no legitimate legal basis to support personal jurisdiction over LDG for this declaratory judgement action. Nonetheless, ignoring the limits of personal jurisdiction and Federal Circuit precedent, SnapPower attempts to hale LDG into court in this state. SnapPower's primary support for personal jurisdiction stems from LDG's *response* to an email from SnapPower in which LDG stated that it is "very familiar with Snap Power and both its litigation and ITC activity." If LDG's responsive email alone is enough to justify personal jurisdiction here, jurisdictional limits are meaningless. In practice, a patent owner would subject itself to personal jurisdiction by merely reading about a company or that company's potentially infringing product. Such a result would violate traditional notions of fair play and substantial justice and is clearly not the law.

SnapPower has taken this remarkable step to derail a private dispute resolution procedure conducted by Amazon.com, Inc.—Amazon's Patent Evaluation Express (APEX) program.[1] Amazon uses the APEX program to mitigate risk of continuing to host products for sale on its

---

[1] Launched in April 2022, the APEX program is based on the prior, similar Amazon Utility Patent Neutral Evaluation (UPNE) program.

website that have been determined, by a neutral, third-party patent attorney, likely to infringe a patent. By participating in the APEX program, a patentee agrees not to sue Amazon for patent infringement for selling or offering to sell identified products through Amazon's sales platform. But in return, both the patent owner and the product manufacturer enjoy a fast, inexpensive, and streamlined dispute resolution procedure conducted by a neutral third party. If, as a result of the APEX review, a product is found likely to infringe, that product is merely removed from sale on Amazon's sales platform.

In May 2022, LDG notified Amazon that SnapPower products being sold on its platform appeared to infringe one of LDG's patents. Following Amazon's review and acceptance of LDG's patent into the APEX program, LDG initiated APEX review against certain SnapPower products. On May 26, 2022, Amazon notified SnapPower of its option to participate or not participate in the APEX. Prior to confirming its participation to Amazon, SnapPower contacted LDG on June 3, 2022. This was the first-ever contact between SnapPower and LDG, as prior to this event, LDG had never communicated, directly or indirectly, with SnapPower in any way. Rather than participate in the streamlined and efficient Amazon APEX program, SnapPower filed this suit seeking a declaratory judgment of no patent infringement. On June 17, LDG received notice from Amazon that it was pausing its APEX evaluation as a result of this lawsuit.

While SnapPower's tactic is bold in its disregard of controlling law, there is no basis for this Court to exert personal jurisdiction over LDG. LDG's motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(2) should, therefore, be granted.

**FACTUAL BACKGROUND**

LDG is Delaware limited liability company with its principal place of business in Arizona. Ex. 1 (Decl. of LDG) at ¶3. LDG has never conducted business in Utah, never owned real property in Utah, never maintained any offices in Utah, never offered nor sold any products or services in Utah, never had officers or employees in Utah, and never had any employees or officers visit for Utah business reasons or reside here. *Id.* at ¶4. LDG has never been registered to do business in Utah, never paid taxes in Utah, and never had a registered agent for service of process in Utah. *Id.* at ¶5. LDG has never sent a notice of infringement letter into Utah. *Id.* at ¶8. LDG has never threatened to sue anyone located in Utah, and even following the filing of this declaratory judgement action by SnapPower, LDG has still not threatened to sue anyone located in Utah, including SnapPower. *Id.* Lastly, the only communication LDG had with anyone in Utah was in response to communication initiated by Kevin O'Barr, the general counsel of SnapPower's investor. *Id.* at ¶7.

LDG owns a patent it believes is being infringed by products being sold on Amazon, a Delaware corporation with a principal place of business in Washington. Because Amazon sells so many products, it has developed a private dispute resolution procedure to address claims of patent infringement: Amazon's Patent Evaluation Express (APEX) program. Compared to district court litigation, the APEX program provides a faster and less costly alternative to resolve patent infringement claims against Amazon.[2] Using the APEX program, a patent holder can inform

---

[2] "APEX cases are being decided in an average of seven weeks, much faster than the two years it takes to get to trial in the average U.S. patent lawsuit." Amazon Brand Protection Report at 11, June 2022 (available at https:// brandservices.amazon.com/progressreport) (last visited July 7, 2022).

3

Amazon of potential infringement and have an independent third-party determine if the product being sold is likely infringing. If the third-party neutral finds there has been infringement, Amazon stops its sale of the infringing goods. Removal of products reviewed in the APEX program is far from guaranteed; the manufacturer or seller of an accused product, in this case SnapPower, is provided the opportunity to argue to the third-party neutral evaluator why their products do not infringe the patent claim at issue. If the manufacturer or seller is successful, Amazon will continue to allow the accused product to be sold.[3] If they are not successful, the products listings are taken down from Amazon's sales platform.

After learning of sales of products under the SnapPower brand that LDG believed infringed its U.S. Patent No. 8,668,347, in late May 2022, LDG notified Amazon of the potential infringement liability for those products using Amazon's APEX program. *Id.* at ¶6. Amazon, through its own volition and under its APEX process, informed SnapPower of LDG's assertions and gave SnapPower the option to participate in the APEX to settle the dispute. SnapPower then reached out to LDG via email. Ex. 2. This was the first ever communication between LDG and SnapPower. LDG responded to SnapPower's email, and the parties arranged for a conference call that included high-level discussions of potential licensing or other ways to moot Amazon's APEX process. *Id.* at ¶7. Those limited, high-level discussions—*initiated by SnapPower*—are the only "contacts" LDG has had with SnapPower, this district, or this State. *See id.* at ¶¶6-7. Indeed, LDG

---

[3] If the independent, third party determines there is no infringement, Amazon will also inform the patent holder of the basis for its determination. *See* Intellectual Property for Rights Owners, Amazon, (explaining types of intellectual property, process for reporting potential infringement, Amazon's procedures for steps taken after its investigation of the allegations, and the parties to which Amazon will report the results of its investigation), *available at* sellercentral.amazon.com/gp/help/external/U5SQCEKADDAQRLZ (last visited Jun. 28, 2022).

never made a direct assertion of infringement against SnapPower and has never even sent a cease-and-desist letter to SnapPower. *See id.* at ¶8. Nor has LDG attempted to stop the sale of SnapPower from products anywhere other than Amazon.com, including from what appears to be SnapPower's website that offers products for sale. *See* SnapPower, Products, www.snapower.com/pages/store# (offering multiple products for sale with "buy now" buttons) (last visited Jun. 30, 2022).

The APEX process has been paused, following SnapPower's notice to Amazon of this lawsuit. Ex. 1 at ¶9. As a result of SnapPower's filing, Amazon has not completed its neutral arbitration process. *See id.* SnapPower chose to sell on Amazon, a condition of which requires consent to Amazon's intellectual property terms and procedures, yet still filed this lawsuit as a tactic to delay the Amazon APEX process. If this Court had personal jurisdiction over LDG, SnapPower's complaint could be well-taken.[4] Indeed, Amazon will follow any court order that clears a product over a patent.[5] But this Court does not have general personal jurisdiction over LDG. Neither does it have specific personal jurisdiction over LDG because LDG does not have "minimum contacts" with Utah. Finally, "traditional notions of fair play and substantial justice" are not supported by extending personal jurisdiction (if it exists, which it does not) over LDG.

---

[4] Amazon's practice appears to be to stay APEX proceedings when a district court proceeding is pending. *See* Ex. 1 at ¶9; *ThermoLife Int'l LLC v. Human Power of N Co.*, No. 22-1316, Dkt. 28, Notice of Factual Developments (Fed. Cir. Mar. 31, 2022) (explaining that Amazon has notified the parties that it has paused its proceedings until completion of the district court litigation and will defer to any decision of the district court). *See also ThermoLife Int'l LCC v. Human Power of N Co.*, No. 6-21-cv-144-ADA, 2021 WL 6303232, at *1 (W.D. Tex. Dec. 21, 2021) (granting temporary injunction against ThermoLife's participating in Amazon's process).

[5] *See* Intellectual Property Policy for Sellers, Amazon.com, available at sellercentral.amazon.com/gp/help/external/201361070 (last visited Jun. 30, 2022) (describing responsive actions to a patent notice, including "a court order demonstrating that your product is non-infringing or that the asserted patent is invalid or unenforceable").

## LEGAL STANDARDS

"The Due Process Clause of the Fourteenth Amendment constrains a State's authority to bind a nonresident defendant to a judgment of its courts." *Walden v. Fiore*, 571 U.S. 277, 283 (2014). Because Utah's long-arm statute is co-extensive with federal limits, whether this Court has personal jurisdiction is limited by federal due process. *See, e.g.*, Utah Code Ann. § 78B–3–201(3) (2008) ("[T]o ensure maximum protection to citizens of this state, should be applied so as to assert jurisdiction over nonresident defendants to the fullest extent permitted by the due process clause of the Fourteenth Amendment to the United States Constitution."); *Starways, Inc. v. Curry*, 980 P.2d 204, 206 (Utah 1999) ("Utah long-arm statute must be extended to the fullest extent allowed by due process of law").

The law of the Federal Circuit, rather than the Tenth Circuit, governs personal jurisdictions in patent cases, including in "declaratory judgment actions that involve patentees as defendants. *See Red Wing Shoe Co. v. Hockerson-Halberstadt, Inc.*, 148 F.3d 1355, 1358 (Fed. Cir. 1998). "While the plaintiff bears the burden to establish minimum contacts, upon this showing, defendants must prove that the exercise of jurisdiction is unreasonable." *Elecs. For Imaging, Inc. v. Coyle*, 340 F.3d 1344, 1350 (Fed. Cir. 2003); *see Behagen v. Amateur Basketball Ass'n of U.S.A.*, 744 F.2d 731, 733 (10th Cir. 1984) ("The plaintiff bears the burden of establishing personal jurisdiction over the defendant."). The allegations in the complaint must be taken as true and factual disputes should be resolved in plaintiffs favor, but the plaintiff is only entitled to reasonable interferences and must make out a prima facie case of personal jurisdiction. *See Elecs. For Imaging*, 340 F.3d at 1349.

**ARGUMENT AND AUTHORITIES**

This case should be dismissed for lack of personal jurisdiction. It is not even a close call that no general or specific personal jurisdiction over LDG exists here. To be sure, there are forums in which a declaratory judgement action against LDG may be proper, but not this forum. LDG has not purposefully, or even incidentally, availed itself of doing business in Utah, nor has it reached into Utah with "minimum contacts." Further, the assertion of jurisdiction over LDG would be patently unfair, unreasonable, and be completely inconsistent with the laws and rulings which govern these facts.

**A.     There Is No General Jurisdiction over LDG.**

In *Diamler AG v. Bauman*, 571 U.S. 117 (2014), the Supreme Court held that when a defendant is not "at home" in the forum state, the exercise of general personal jurisdiction is not proper. 571 U.S. at 137; *id.* at 132-33 & n.11 ("General jurisdiction requires affiliations so continuous and systematic as to render [the defendant] essentially at home in the forum State, i.e., comparable to domestic enterprise in that State." (cleaned up)[6]). The Court *refused* to "approve the exercise of general jurisdiction in every state in which a corporation 'engages in a substantial, continuous, and systematic course of business.'" *Id.* at 138-39. Instead, a corporation will be considered "at home" where it is incorporated and where it has its principal place of business. *Id.* at 137-38.

---

[6] The "(cleaned up)" signal means that internal quotations, omissions, and subsequent history citations that are not critical to the citation have been removed for readability. *See* Debra Cassens Weiss, Justice Thomas goes rogue on the Bluebook with 'cleaned up' citation—to the delight of appellate lawyers, ABA Journal (Mar. 15, 2021 12:35 PM CDT), *available at* tinyurl.com/wvk3j6s3 (last visited June 28, 2022).

Because LDG was neither incorporated in Utah nor has its principal place of business in Utah, nor had any systematic contacts with Utah, it cannot be "at home" here. Ex. 1 at ¶¶3-5. LDG is "at home" in Delaware, its place of incorporation, and in Arizona, its principal place of business. Therefore, there is not general personal jurisdiction over LDG in Utah.

B.  **There is No Specific Jurisdiction over LDG.**

Under Federal Circuit law, which applies here, there is a three-factor test for specific personal jurisdiction:

> (1) whether the defendant "purposefully directed" its activities at residents of the forum; (2) whether the claim "arises out of or relates to" the defendant's activities with the forum; and (3) whether assertion of personal jurisdiction is "reasonable and fair." The first two factors correspond with the 'minimum contacts' prong of the *International Shoe Co. v. Washington*, analysis, and the third factor corresponds with the "fair play and substantial justice" prong of the analysis.

*Xilinx, Inc. v. Papst Licensing GmbH & Co. KG*, 848 F.3d 1346, 1353 (Fed. Cir. 2017) (cleaned up); *see New World Int'l, Inc. v. Ford Global Techs., LLC*, 859 F.3d 1032, 1037 (Fed. Cir. 2017). Despite needing all three, SnapPower's allegations support none.

1.  **LDG Has Not "Purposefully Directed" Any Activities at this State.**

As discussed above, LDG has not purposefully directed any activities to Utah. Read most favorable to SnapPower, LDG has (1) *responded* to an email from SnapPower that came from Utah, (2) accepted an invitation for a phone conference from SnapPower in Utah, and (3) requested Amazon investigate products being sold that were provided by SnapPower (from an unknown

location).[7] *See* Ex. 1 at ¶¶6-7. None of these activities, viewed in any light, suggest any actions by LDG purposefully directed at Utah.

LDG did not reach out to Utah; LDG responded to inquiries from SnapPower. Those communications were therefore not "purposefully directed" by LDG to Utah. *See Walden*, 571 U.S. at 284 ("The relationship must arise out of contacts that the 'defendant *himself* creates with the forum state. We have consistently rejected attempts to satisfy the defendant-focused 'minimum contacts' inquiry by demonstrating contacts between the plaintiff (or third parties) and the forum state. But the plaintiff cannot be the only link between the defendant and the forum." (cleaned up)). Moreover, neither of LDG's responses included a demand for SnapPower to cease-and-desist or detailed allegations of infringement. *See* Ex. 1 at ¶8.

This case is analogous to *Maxchief Investments Ltd. v. Wok & Pan Industries, Inc.*, 909 F.3d 1134, 1138-39 (Fed. Cir. 2018). In that case, Maxchief attempted to assert personal jurisdiction over Wok & Pan in Tennessee after Wok & Pan filed a lawsuit in California against Staples and sought a nationwide injunction in California against Staples and its "distributors" (including Maxchief in Tennessee). *Id.* The Federal Circuit affirmed the dismissal for lack of personal jurisdiction, holding that Wok & Pan's conduct was directed to California (despite the foreseeable effects in Tennessee) and did not support a finding of minimum contacts with Tennessee under *Walden*). *See id.* Here, similarly, LDG's allegations of infringement were directed to Amazon and not SnapPower in Utah. *See id.* LDG never sent a cease-and-desist demand

---

[7] SnapPower's allegation that LDG is "very familiar with Snap Power and both its litigation and ITC activity," suggests at most that LDG is aware of SnapPower and its prior litigations but says nothing about any location of SnapPower's manufacturing or supplying of products. *See* Dkt. 2 (Compl.) at ¶9.

9

to SnapPower. Even if LDG had sent such a letter, that would still not be enough to support personal jurisdiction over LDG. Under Federal Circuit case law, although cease-and-desist demands—*not present here*—directed to the putative forum state support a finding of minimum contacts, they are insufficient for personal jurisdiction. *See, e.g.*, *New World Int'l*, 859 F.3d at 1037-38 (explaining that the "court has acknowledged that the defendant purposefully directs his activities at residents of the forum when the defendant sends a cease and desist letter to a potential plaintiff in that particular forum. . . . however, this court has held that it is improper to predicate personal jurisdiction on the act of sending ordinary cease and desist letters into a forum, without more." (citing *Red Wing Shoe*, 148 F.3d at 1360-61)). Thus, LDG has not 'purposely directed' any activities at Utah.

Although a trademark and not a patent case,[8] Judge Campbell's analysis in *American Covers Inc. v. Serious Scents, Inc.*, No. 2:13-cv-1032, 2014 WL 4956353 (D. Utah Oct. 1, 2014), is helpful here. In that case, American Covers alleged that Serious Scents both (i) sent cease-and-desist and litigation-threatening letters to it in Utah and (ii) contacted Wal-Mart (in Arkansas) to allege infringement against American Covers' products to support personal jurisdiction over Serious Scents. *Id.* at *1-2. For specific jurisdiction, the court found that Serious Scents' letters were insufficient to find minimum contacts with Utah because the "focal point" of those was merely a "known forum resident" rather than actions "expressly aimed" at Utah as a forum. *Id.* at *4. The court found its analysis consistent with *Far West Capital, Inc. v. Towne*, 46 F.3d 1071 (10th Cir. 1995), in which the Tenth Circuit held that phone calls and letters with the

---

8   Therefore, applying Tenth Circuit instead of Federal Circuit law.

defendant were insufficient because they had no connection to Utah beside it being the party's corporate domicile. *Am. Covers*, 2014 WL 4956353, at *5 (citing *Far West Capital*, 46 F.3d at 1076-77). The court further found that Serious Scents' complaint to Wal-Mart was directed to Arkansas and not Utah, even if Serious Scents knew American Covers was a Utah business, it was not "purposeful action directed at Utah." *Id.* at *5-6; *accord Maxchief*, 909 F.3d at 1139. *See also Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985) ("Although it has been argued that foreseeability of causing injury in another State should be sufficient to establish such contracts there when policy considerations so require, the Court has consistently held that this kind of foreseeability is not a 'sufficient benchmark' for exercising personal jurisdiction."). Finally, the court distinguished *Dudnikov v. Chalk & Vermilion Fine Arts, Inc.*, 514 F.3d 1063 (10th Cir. 2008), because in that case it was an intended and automatic consequence of the complaint to eBay against plaintiff's eBay business that its pending auction would be cancelled. *See id.* at 1070 (finding minimum contacts with Colorado when intended and automatic consequence of infringement complaint was cancellation of pending auction for sale of products from Colorado). In contrast, in *American Scents*, there was no evidence that Wal-Mart would automatically stop selling American Scents' products. *Am. Covers*, 2014 WL 4956353, at *5-6. In this case, as opposed to *Dudnikof*, no action has yet been taken by Amazon. No product of SnapPower has been taken down. In fact, it is SnapPower that prevented that process from being completed, through the filing of this action. *See* Ex. 1 at ¶9.

    Here, there is no evidence of LDG reaching out to Utah, *except in response* to SnapPower's communications. To date, this has been the only communication between SnapPower and LDG. And those communications reflect no "focus point" towards Utah beyond SnapPower happening

11

to be a forum resident. *Id.* at *4-5. Similarly, LDG's complaint to Amazon was not directed to Utah and did not automatically stop any of SnapPower's sales. *See Maxchief*, 909 F.3d at 1139; *Am. Covers*, 2014 WL 4956353, *5-6 ("American Covers has not alleged that Wal-Mart has a set policy for responding to such calls, that such calls automatically result in a product being discontinued from sale at Wal-Mart, or that Serious Scents had any specific understanding of what the result would be in making the call. Although Serious Scents may have understood its call may have potential effects on American Covers in Utah, those effects were 'no more than foreseeable side-effects.'"); Ex. 1 at ¶¶6, 9.

Because LDG has not purposefully directed any of its activities at Utah, there can be no personal jurisdiction over LDG in Utah.

### 2. There Is No LDG Conduct in this State.

SnapPower's declaratory judgement claim does not 'arise out of or relate to' any LDG conduct in this state. As explained above, LDG has not reached out to Utah and has conducted no business within Utah. Ex. 1 at ¶¶2-7. Thus, this factor is also lacking; there can be no personal jurisdiction over LDG in Utah.

### 3. Personal Jurisdiction over LDG Would Not Be 'Reasonable and Fair.'

Courts consider five factors when determining whether "exercising personal jurisdiction would comport with 'fair play and substantial justice' . . . : (1) the burden on the defendant, (2) the forum's interest in adjudicating the dispute, (3) the plaintiff's interest in obtaining convenient and effective relief, (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and (5) the shared interest of the states in furthering fundamental substantive social policies." *Synthes (U.S.A.) v. G.M. Dos Reis Jr. Ind. Com de Equip. Medico*, 563 F.3d 1285,

12

1299 (Fed. Cir. 2009) (citing *Burger King*, 471 U.S. at 477). These factors may "establish a 'compelling case' that would 'render jurisdiction unreasonable' despite the presence of minimum contacts." *Id.* (citing *Burger King*, 471 U.S. at 477).

Under Federal Circuit law, "principles of fair play and substantial justice afford a patentee sufficient latitude to inform others of its patent rights without subjecting itself to jurisdiction in a foreign forum. A patentee should not subject itself to personal jurisdiction in a forum solely by informing a party who happens to be located there of suspected infringement." *Red Wing Shoe*, 148 F.3 at 1360-61.

Here, principles of fair play and substantial justice protect LDG from being haled into Utah. LDG did not even send a cease-and-desist letter into Utah. Nor has it attempted to enforce any rights whatsoever against SnapPower's sales outside of Amazon.com. Ex. 1 at ¶8. The factors above therefore either are neutral or support declining to exercise personal jurisdiction, if it existed (and it does not, as shown above): (1) The burden on LDG would be great as it has never been to Utah, *see id.* at ¶¶4-5; (2) Utah's interest in adjudicating this dispute (for SnapPower) is no greater than Arizona's interest in protecting its citizen's (LDG's) rights; (3) Amazon's APEX process potentially provides access to much faster and more cost-effective potential resolution of this dispute, *see* notes 1-4, *supra*; (4) Utah is no better (or worse) equipped than Arizona to handle patent infringement cases; and (5) the "shared interest of the several States in furthering substantive social policies, plays little role in this patent dispute," *Breckenridge Pharm., Inc. v. Metabolite Labs., Inc.*, 444 F.3d 1356, 1368 (Fed. Cir. 2006).

Further, a finding that LDG is subject to personal jurisdiction in Utah on these facts would be akin to a rule that every party attempting to utilize Amazon's streamlined APEX procedure

13

would be subject to personal jurisdiction everywhere in the United States. Such a rule would, of course, be wholly inconsistent with the due process protections and limitations on personal jurisdiction consistently imposed by the Supreme Court. *E.g.*, *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316-17 (1945) (holding that personal jurisdiction limits each state's authority to defendants whose "minimum contacts" make maintaining the suit "reasonable, in the context of our federal system of government" and "does not offend traditional notions of fair play and substantial justice"); *see Ford Motor Co. v. Montana Eighth Judicial District Court*, 141 S. Ct. 1017, 1024 (2021) (holding that Ford's contacts of marketing and selling cars in Montana and Minnesota were related enough to provide the allegations of defective Ford products, even if the specific cars allegedly defective were not sold in Montana or Minnesota, for personal jurisdiction); *Goodyear Dunlop Tires Opers., S.A. v. Brown*, 564 U.S. 915, 919-20 (2011) (holding that general jurisdiction over a defendant is only proper where it is "essentially at home").

## CONCLUSION

For these reasons, Defendant Lighting Defense Group, LLC respectfully requests that the Court dismiss the case for lack of personal jurisdiction pursuant to Fed. R. Civ. P. 12(b)(2). LDG further respectfully requests all other relief to which it is entitled.

Date: July 12, 2022            Respectfully submitted,

By: /s/ Ryan L. Marshall
BARNES & THORNBURG, LLP
Ryan Marshall
299 S. Main Street, Suite 1825
Salt Lake City, UT 84111
Telephone (801) 906-5125
ryan.marshall@btlaw.com

YETTER COLEMAN LLP
Jeffrey A. Andrews (*pro hac vice* forthcoming)
Christopher R. Johnson (*pro hac vice* forthcoming)
811 Main Street, Suite 4100
Houston, Texas 77002
(713) 632-8000
jandrews@yettercoleman.com
cjohnson@yettercoleman.com

ATTORNEYS FOR DEFENDANT
LIGHTING DEFENSE GROUP, LLC

**Certificate of Service**

I certify that on July 12, 2022, a copy of this document was served on all counsel of record using the Court's e-filing system.

*/s/ Ryan L. Marshall*
Ryan L. Marshall