IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH

| | |
|---|---|
| **SNAPRAYS, LLC, dba SNAPPOWER,**<br><br>**Plaintiff,**<br><br>vs.<br><br>**LIGHTING DEFENSE GROUP LLC,**<br><br>**Defendant.** | MEMORANDUM DECISION<br>AND ORDER<br><br>Case No. 2:22-CV-403-DAK-DAO<br><br>Judge Dale A. Kimball<br><br>Magistrate Judge Daphne A. Oberg |

This matter is before the court on Defendant Lighting Defense Group LLC's Motion to Dismiss for Lack of Personal Jurisdiction [ECF No. 10]. On October 5, 2022, the court held a hearing on the motion via Zoom videoconferencing due to the Covid-19 pandemic. At the hearing, Elliott Williams represented Plaintiff SnapRays LLC ("SnapPower"), and Jeffrey A. Andrews, Christopher R. Johnson, and Ryan Marshall represented Defendant. The court took the motion under advisement. After carefully considering the memoranda filed by the parties and the law and facts relevant to the pending motion, the court issues the following Memorandum Decision and Order.

## BACKGROUND

Defendant Lighting Defense Group ("LDG") contends that SnapPower is selling products on Amazon that infringe its patent, U.S. Patent No. 8,668,347. In May 2022, LDG notified Amazon that SnapPower products being sold on its platform appeared to infringe LDG's patent. Amazon has a private dispute resolution procedure to address claims of patent infringement, known as Amazon's Patent Evaluation Express ("APEX") program. Under the APEX program, a patent holder can inform Amazon of potential infringement and have an independent third-party

1

determine if the product being sold is likely infringing. If the third-party finds that there has been infringement, Amazon stops the sale of the infringing goods. The process is generally faster and less costly than a lawsuit.

Following Amazon's review and acceptance of LDG's patent into its APEX program, LDG initiated APEX review against the allegedly infringing SnapPower products. On May 26, 2022, Amazon notified SnapPower of its option to participate in the APEX review process. The Amazon notice told SnapPower that it could resolve the claims with the patent owner within three weeks or participate in Amazon's evaluation process. Otherwise, Amazon would remove the disputed listings from Amazon's website. The notice also stated that if SnapPower filed a lawsuit against the patent owner for declaratory judgment of non-infringement, it could continue selling the disputed items while the lawsuit proceeded.

Prior to confirming its participation to Amazon, SnapPower emailed LDG on June 3, 2022. This was the first contact between SnapPower and LDG. LDG responded to SnapPower's email, and the parties arranged for a conference call that included high-level discussions of potential licensing or other ways to moot Amazon's APEX process. Those discussions are the only contacts LDG has had with SnapPower.

Rather than participating in Amazon's APEX program, SnapPower filed this lawsuit seeking a declaratory judgment of noninfringement. On June 17, 2022, LDG received notice from Amazon that it was pausing its APEX evaluation as a result of this lawsuit. Amazon will follow any court order regarding the enforceability of the patent.

SnapPower is a Utah company with its principal place of business in Vineyard, Utah. LDG is a Delaware limited liability company with its principal place of business in Arizona. LDG has never conducted business in Utah, never owned real property in Utah, never maintained

any office in Utah, never offered or sold any products or services in Utah, never had officers or employees in Utah, and never had any employees or officers visit Utah for business reasons or reside here. LDG has never been registered to do business in Utah, never paid taxes in Utah, and never had a registered agent for service of process in Utah.

LDG has never sent a notice of infringement letter or cease-and-desist letter into Utah. LDG has never threatened to sue anyone located in Utah. The only communication LDG has had with anyone in Utah was in response to communication initiated by Kevin O'Barr, the general counsel of SnapPower's investor, as mentioned above.

## DISCUSSION

### LDG's Motion to Dismiss

LDG moves to dismiss this case for lack of personal jurisdiction. "The law of the forum state and constitutional due process limitations govern personal jurisdiction in federal court." *Old Republic Ins. Co. v. Cont'l Motors, Inc.*, 877 F.3d 895, 903 (10th Cir. 2017). However, the law of the Federal Circuit rather than the Tenth Circuit governs personal jurisdiction in patent cases, such as this one. *Red Wing Shoe Co. v. Hockerson-Halberstadt, Inc.*, 148 F.3d 1355, 1358 (Fed. Cir. 1998). Plaintiff "bears the burden to establish minimum contacts." *Elecs. for Imaging, Inc. v. Coyle*, 340 F.3d 1344, 1350 (Fed. Cir. 2003). The court considers the well-pleaded allegations in the complaint as true, and plaintiff is entitled to reasonable inferences in making out a prima facie case of personal jurisdiction. *Id.* at 1349.

SnapPower does not claim there is general jurisdiction over LDG in Utah. LDG is not "at home" in Utah and has no property, assets, or other substantial and continuous presence in Utah. *Daimler AG v. Bauman*, 571 U.S. 117 (2014). Therefore, the only issue is whether there is specific personal jurisdiction over LDG in Utah with respect to the dispute at issue in this lawsuit.

Under Federal Circuit law, there is a three-factor test for specific jurisdiction: "(1) whether the defendant 'purposefully directed' its activities at residents of the forum; (2) whether the claim 'arises out of or relates to' the defendant's activities with the forum; and (3) whether assertion of personal jurisdiction is 'reasonable and fair.'"  *Xilinx, Inc. v. Papst Licensing GmbH & Co.* KG, 848 F.3d 1346, 1353 (Fed. Cir. 2017).  "The first two factors correspond with the 'minimum contacts' prong of the *International Shoe Co. v. Washington* analysis, and the third factor corresponds with the 'fair play and substantial justice' prong."  *Id.*

LDG argues that is has not purposefully directed any activities to Utah.  LDG responded to an email from SnapPower that came from Utah, accepted an invitation for a telephone conference from SnapPower in Utah.  LDG responded to inquiries from SnapPower, and none of those responses included a cease-and-desist letter.  However, LDG initiated the review of SnapPower's products through Amazon's APEX program.  In doing so, LDG did not know that SnapPower is located in Utah, but Amazon, on LDG's behalf, reached out to SnapPower in Utah.

SnapPower focuses on the Federal Circuit's decision in *Campbell Pet Co. v. Miale*, to assert that LDG purposefully directed its activities to Utah.  542 F.3d 879, 881-82 (Fed. Cir. 2008).  In Campbell, the patentee traveled from California to attend a three-day convention in Washington, where she confronted several of the alleged infringer's employees at the convention, accused them of infringement, and asked the convention manager to remove their display from the convention.  *Id.*  The alleged infringer sued for declaratory judgment of non-infringement in Washington, and the Federal Circuit found that the patentee's infringement allegations and attempt to have the display removed was "extra-judicial patent enforcement" that went "beyond simply informing the accused infringer of the patentee's allegations of infringement."  *Id.*  The court noted that the

4

patentee "took steps to interfere with the plaintiff's business by enlisting a third party to take action against the plaintiff." *Id*. at 887.

In making its decision, the *Campbell* court cited with approval the Tenth Circuit decision in *Dudnikov v. Chalk & Vermilion Fine Arts, Inc.*, 514 F.3d 1063, 1069 (10th Cir. 2008). *Campbell*, 542 F.3d at 886. In *Dudnikov*, the Colorado plaintiffs sold products on eBay that the defendant copyright owner believed infringed his copyrights. 514 F.3d at 1068-69. The defendant contacted eBay in California, which resulted in plaintiff's eBay auction being suspended. *Id.* at 1069. The plaintiff sued for declaratory judgment in Colorado, and the Tenth Circuit held that the defendants' conduct was purposefully directed at plaintiffs in Colorado because defendants committed an intentional act of sending notice of copyright infringement to eBay specifically designed to terminate plaintiff's eBay auction. *Id.* at 1075. The court analogized sending the notice of copyright infringement to eBay as a bank shot in basketball that, while directed to the backboard, is also aimed at the net with the intention of putting the ball in the net. *Id.* "Their 'express aim' thus can be said to have reached into Colorado in much the same way that a basketball player's express aim in shooting off of the backboard is not simply to hit the backboard, but to make a basket." *Id.* The *Dudnikov* court also found that plaintiff's claim arose out of defendants' activities because plaintiffs would have had no reason to seek a declaratory judgment if defendants had not sent the notice of copyright infringement to eBay. *Id.* at 1079. Finally, the court found that exercising personal jurisdiction was reasonable and fair because, rather than sending a cease-and-desist letter directly to plaintiffs, defendants "communicated their complaint to a third party with the intent that the third party take action directly against plaintiffs' business interests." *Id.* at 1082.

"Defendants did not merely inform plaintiffs of their rights and invite settlement discussions prior to potential litigation, but took affirmative steps with third parties that suspended plaintiffs' ongoing business operations." *Id.*

Relying on *Dudnikov*, the Federal Circuit in *Campbell* reasoned that it was irrelevant whether defendants' efforts to remove plaintiffs from the convention were ultimately unsuccessful. 542 F.3d at 887. "[T]he pertinent step taken by [the defendant] was the request that action be taken." *Id.* However, the Federal Circuit also recognized that, unlike the situation in *Dudnikov*, the defendant's "efforts at private enforcement occurred within the forum state and while she was personally present there." *Id.* Thus personal jurisdiction within that forum was even more clear than in *Dudnikov*.

SnapPower argues that *Campbell* and *Dudnikov* demonstrate that the defendant's personal presence in the forum state is not required to exercise personal jurisdiction over defendant. SnapPower appears to be correct with respect to Tenth Circuit law under *Dudknikov*. But Tenth Circuit law is not binding in this matter, and the Federal Circuit, while citing *Dudnikov* favorably in *Campbell*, does not appear to have fully adopted *Dudnikov*'s bank shot theory of personal jurisdiction in subsequent cases.

In *Radio Systems Corp. v. Accession, Inc.*, 638 F.3d 785 (Fed. Cir. 2011), the Federal Circuit specifically declined to follow *Dudnikov*'s "bank shot" theory because it found that "runs afoul of our decision in *Avocent*." *Radio Systems*, 638 F.3d at 792 (citing *Avocent Huntsville Corp. v. Aten Inern. Co.*, 552 F.3d 1324, 1334 (Fed. Cir. 2008)). In *Radio Systems*, the plaintiff contended that the interactions between the defendant's counsel in New Jersey and the U.S. Patent and Trademark Office ("PTO") in Virginia gave rise to personal jurisdiction over the defendant in the plaintiff's home state of Tennessee.

6

*Id.* The PTO had issued a notice of allowance for the plaintiff's patent application that the defendant believed ignored his own patent rights. *Id.* at 788. In addition to contacting the plaintiff directly, the defendant's counsel had a conversation with the PTO examiner for the plaintiff's patent application that resulted in the PTO withdrawing the notice of allowance previously issued for the plaintiff's patent application. *Id.* The defendant then sent letters to the plaintiff outlining its infringement allegations and suggesting that the dispute be settled through a licensing agreement. *Id.* The plaintiff then brought suit seeking a declaratory judgment of noninfringement in Tennessee. *Id.*

The plaintiff in *Radio Systems* contended that the defendant's counsel's contacts with the PTO were extra-judicial enforcement efforts that would give rise to personal jurisdiction under *Campbell* and *Dudnikov*. *Id*. at 791-92. The *Radio Systems* court reviewed its prior decision in *Campbell* and noted that in its subsequent case in *Avocent*, it "distinguished *Campbell Pet* on the ground that in that case, the extrajudicial enforcement activities occurred within the forum state." *Id.* Whereas, in the *Radio Systems* case, "the district court held that [the defense counsel's] contacts with the PTO did not support Radio System's jurisdictional argument because those contacts were directed at Virginia (the site of the PTO) rather than Tennessee [plaintiff's home state]. In doing so, the district court correctly followed our holding in *Avocent*." *Id.* at 792. The *Radio Systems* court then specifically declined to follow *Dudnikov*: "Radio Systems argues that *Dudnikov* and *Bancroft & Masters* support its argument that [the defense counsel's] contacts with the PTO support personal jurisdiction in the district court in Tennessee [plaintiff's home state], but that argument runs afoul of our decision in *Avocent*. We made clear in *Avocent* that enforcement activities taking place outside the forum state do not give rise to personal

7

jurisdiction in the forum, and that decision is controlling here." *Id.* at 792.

*Radio Systems* and *Avocent* are controlling here, not *Dudnikov*. The Federal Circuit's reliance on *Dudnikov* in *Campbell* was specifically limited to "in forum" extra-judicial enforcement activities by the Federal Circuit's subsequent cases in *Avocent* and *Radio Systems*. *Id.* Under Federal Circuit law, "enforcement activities taking place outside the forum state do not give rise to personal jurisdiction in the forum." *Id.* Accordingly, LDG's contact with Amazon, from Arizona to Washington, is not an extra-judicial enforcement activity in Utah that can give rise to personal jurisdiction in Utah. In fact, the contacts in this case are even less than the contacts in *Radio Systems*. In *Radio Systems,* the defendant had more conversation with the alleged infringer and sent a cease-and-desist letter to the forum. In this case, LDG responded to SnapPower's request to talk and never sent a cease-and-desist letter.1

LDG contends that another case from the Federal Circuit also supports its position that personal jurisdiction is lacking in this forum. In *Maxchief Investments, Ltd v. Wok & Pan Industries, Inc.*, 909 F.3d 1134 (Fed. Cir. 2018), Maxchief, the plaintiff in a declaratory judgment action for noninfringement, with its principal place of business in China, failed to demonstrate personal jurisdiction in Tennessee, the location of its exclusive U.S. distributor, in a dispute with one of its competitors in the plastic folding table market, Wok. *Id.* at 1136-37. Wok had filed suit in California against Staples, one of the main retailers of Maxchief's tables, alleging that Maxchief's tables infringed Wok's patents and asking for a nationwide injunction. *Id.* at 1136. In turn, Staples asked the Tennessee distributor to defend and indemnify it, and the Tennessee distributor asked Maxchief to defend and indemnify it. *Id.* Maxchief then filed the

---

1 Under Federal Circuit law, although cease-and-desist demands directed to the putative forum state support a finding of minimum contacts, they are, without more, insufficient to establish personal jurisdiction. *New World*, 859 F.3d at 1037-38. There is not a cease-and-desist letter in this case and there are no in forum extra-judicial actions.

noninfringement action in Tennessee. *Id.*

The Federal Circuit affirmed the district court's dismissal for lack of personal jurisdiction, holding that Wok's patent enforcement lawsuit was directed to California, despite foreseeable effects in Tennessee, and such actions did not support a finding of minimum contacts in Tennessee because Wok did not seek to enforce its patents in Tennessee. *Id.* at 1138-39. Maxchief argued that Wok's California lawsuit against Staples had "effects" in Tennessee because Wok's requested injunction would extend to the Tennessee distributor, and Maxchief would respond to any injunction by changing its Tennessee activities. *Id.* at 1138. But the Federal Circuit held that "it is not enough that Wok's lawsuit might have 'effects' in Tennessee. Rather, jurisdiction 'must be based on intentional conduct by the defendant' directed at the forum." *Id.* "Wok's lawsuit against Staples—filed in California against a California resident—was directed at California, not Tennessee." *Id.* at 1139.

Similarly, LDG's allegations of infringement were directed to Amazon in Washington, not SnapPower in Utah. Those enforcement actions may have foreseeable effects in Utah, but that is not a basis for personal jurisdiction over LDG in Utah. As explained in *Maxchief*, jurisdiction must be based on the defendant's intentional conduct directed at the forum. LDG never sent a cease-and-desist letter to SnapPower in Utah. Even if LDG had sent such a letter, that would still not be enough to support personal jurisdiction over LDG under the Federal Circuit's *Red Wing Shoe Co. v. Hockerson-Halberstadt, Inc.*, 148 F.3d 1355 (Fed. Cir. 1998) line of cases, which recognize that merely sending notice letters of patent infringement is not enough because principles of fair play "afford a patentee sufficient latitude to inform others of its patent rights without subjecting itself to jurisdiction in a foreign forum." *Id.* at 1360-61. Here, there is no evidence of LDG reaching out to Utah except in response to SnapPower's communications.

Those communications do not reflect any directed activity towards Utah.

SnapPower also argues a type of "reverse stream of commerce" theory based on *Beverly Hills Fan Co. v. Royal Sovereign Corp.,* 21 F.3d 1558, 1566 (Fed. Cir. 1994). But that line of case law is distinguishable because LDG has not sold anything. Moreover, at least one other Federal Circuit case has stated that "*Beverly Hills Fan*, with its unfettered reliance on a 'stream of commerce' theory, is now shaky precedent to the extent that it runs counter to the *McIntyre* decision." *AFTG-TG, LLC v. Nuvoton Tech. Co.*, 689 F.3d 1358, 1368 (Fed. Cir. 2012) (Rader, J. concurring).

In addition, while the Patent Act's venue provisions appear to favor SnapPower, they are irrelevant because LDG has not filed a lawsuit against SnapPower under the Patent Act. Therefore, those venue provisions do not apply to the court's determination of jurisdiction in the instant action.

The court concludes that the contacts between LDG and the State of Utah are insufficient to give this court jurisdiction over LDG. SnapPower has not demonstrated that LDG purposely directed its activities at SnapPower in Utah or that this action arises out of or relates to any LDG activities in Utah. Moreover, exercising personal jurisdiction over LDG in Utah would not be reasonable or fair. Under Federal Circuit law, "principles of fair play and substantial justice afford a patentee sufficient latitude to inform others of its patent rights without subjecting itself to jurisdiction in a foreign forum. A patentee should not subject itself to personal jurisdiction in a forum solely by informing a party who happens to be located there of suspected infringement." *Red Wing Shoe*, 148 F.3d at 1360-61. The court agrees with LDG that a finding that LDG is subject to personal jurisdiction in Utah on these facts would be akin to a rule that every party attempting to utilize Amazon's APEX program would be subject to personal jurisdiction

everywhere in the United States. Such a rule would be inconsistent with the Federal Circuit's decisions in *Avocent*, *Radio Systems*, and *Maxchief*. Accordingly, the court grants LDG's Motion to Dismiss for Lack of Personal Jurisdiction.

CONCLUSION

Based on the above reasoning, Defendant Lighting Defense Group LLC's Motion to Dismiss for Lack of Personal Jurisdiction [ECF No. 10] is GRANTED.

DATED this 4th day of November, 2022.

BY THE COURT:

DALE A. KIMBALL,
UNITED STATES DISTRICT JUDGE